# Constitutionality of the OLC Reporting Act of 2008

S. 3501, the OLC Reporting Act of 2008, which would require the Department of Justice to report to Congress on a wide range of confidential legal advice that is protected by constitutional privilege, is unconstitutional.

The bill raises very serious policy concerns because it would undermine the public interest in confidential advice and information sharing that is critical to informed and effective government decisionmaking.

November 14, 2008

LETTER FOR THE MAJORITY LEADER
UNITED STATES SENATE

The Department of Justice has reviewed S. 3501, the OLC Reporting Act of 2008, which would amend 28 U.S.C. § 530D to require the Department to report to Congress on a wide range of confidential legal advice, thus extending the reporting requirement far beyond the decisions on statutory unenforceability currently covered by the statute. The bill would require reporting about advice that is protected by constitutional privilege and, in so doing, could deter Executive Branch officials from seeking, and the Department from providing, candid legal advice regarding the administration of important government programs. We believe that the bill is unconstitutional. Moreover, the bill raises very serious policy concerns because it would undermine, rather than advance, the public interest in confidential advice and information sharing that Congress, the Supreme Court, and administrations of both parties have long recognized as critical to informed and effective government decisionmaking. For these reasons, explained in greater detail below, the Department strongly opposes this legislation, and if it were presented to the President, his senior advisers would recommend that he veto it.

## I. Unconstitutionality

Section 2 of the bill would amend 28 U.S.C. § 530D(a)(1) to require the Attorney General to submit to Congress, within 30 days of issuing legal advice covered by the provision, a report of any instance in which the Department issues an "authoritative legal interpretation" of "any Federal statute," even if the legal construction has not risen, and may never rise, to the level of an Executive Branch policy not to enforce the statute in question and simply construes the statute using settled interpretive rules that courts routinely employ. Section 2 would then amend 28 U.S.C. § 530D(a)(2) to mandate that any report containing "classified information" related to "intelligence activities" shall be deemed "submitted to Congress" in accordance with section 530D as amended only if the information is submitted to the House and Senate judiciary committees as well as the intelligence

committees, and that any report containing "classified information about covert actions" shall be deemed properly submitted only if it is submitted to the foregoing committees, the Speaker and Minority Leader of the House of Representatives, and the Majority and Minority Leaders of the Senate.

The bill is unconstitutional in two respects. First, it infringes upon the President's settled constitutional authority over classified information by purporting to prescribe the content, timing, and recipients of any classified disclosures the Executive Branch chooses to make in connection with section 530D reports. *See, e.g.*, *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (discussing the President's constitutional authority to control national security information); *Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. 92, 94–99 (1998) (same, discussing cases and practice since the Founding). Administrations of both parties have recognized that legislative mandates directing the timing and extent of classified disclosures are constitutionally objectionable even when the disclosures in question would go to Congress. In 1998, for example, the Department objected to, and President Clinton ultimately threatened to veto, *see* Statement of Administration Policy, S. 1668—Disclosure to Congress Act of 1998 (Mar. 9, 1998), a bill that would have required the President to allow federal agency employees to disclose certain classified information directly to members of Congress. *See Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. at 100. The Department testified that the bill:

> would deprive the President of his authority to decide, based on the national interest, how, when and under what circumstances particular classified information should be disclosed to Congress. This is an impermissible encroachment on the President's ability to carry out core executive functions. In the congressional oversight context, as in all others, the decision whether and under what circumstances to disclose classified information must be made by someone who is acting on the official authority of the President and who is ultimately responsible to the President.

*Id*. S. 3501 violates the foregoing principles by purporting to prescribe the timing and extent of any classified disclosures the President, acting through the Attorney General, would choose to make in connection with the Executive Branch's reporting obligations under section 530D as amended.

Second, and more broadly, the bill's disclosure requirements are unconstitutional because they would require reporting to Congress about confidential legal advice that is subject to the constitutional doctrine of executive privilege while narrowing section 530D's current exemption for privileged information from required reports. Currently, 28 U.S.C. § 530D requires the Attorney General to report Department legal positions outside the litigation context only where the Department "establishes or implements a formal or informal policy" either (1) to

refrain from enforcing a statutory or other legal position "on the grounds that such provision is unconstitutional" or (2) to refrain from complying with a binding judicial decision interpreting the Constitution or any other law that is enforced by the Department. 28 U.S.C. § 530D(a)(1)(A)(i), (ii). The bill would substantially expand the foregoing reporting obligations by requiring the Attorney General to report on legal advice on statutory construction that does not, and may never, result in a "formal or informal policy to refrain from enforcing" a federal statute on constitutional or other grounds. Much of the legal advice the Department provides the President and Executive Branch agencies about how to interpret and comply with federal statutes might fall within one of the sub-provisions the bill would add to section 530D(a)(1). For example, many legal opinions apply the judicially created doctrine of constitutional avoidance to support an interpretation of a statute that does not raise the constitutional concerns that would be raised by an alternative interpretation. And many opinions similarly respect and apply the judicially created "clear statement" principles that counsel against applying a statute in a way that affects the balance of power among the three branches of the federal government, or the balance of power between the federal government and the states, absent a clear statement that the legislation is designed to do so.

Thus, we believe that the bill would contemplate reporting on many Office of Legal Counsel ("OLC") opinions. OLC opinions belong to a category of Executive Branch documents protected by executive privilege. They fall within the scope of the deliberative process, attorney-client, and, to the extent they are generated or used to assist in presidential decisionmaking, presidential communications components of executive privilege. *See, e.g.*, *Assertion of Executive Privilege With Respect to Clemency Decision*, 23 Op. O.L.C. 1, 1–2 (1999) (opinion of Attorney General Janet Reno) (addressing presidential communications component); *Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 2, 3 (1996) (opinion of Attorney General Reno) (discussing the deliberative process and attorney-client components) ("*White House Counsel's Office Documents")*; *Confidentiality of the Attorney General's Communications in Counseling the President*, 6 Op. O.L.C. 481, 494 n.24 (1982) (explaining that the attorney-client privilege is "subsumed under a claim of executive privilege when a dispute arises over documents between the Executive and Legislative Branches").

Administrations of both political parties have long recognized the importance of protecting the Executive Branch's confidential legal advice. *See Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, 10 Op. O.L.C. 68, 78 (1986) (discussing "importance of protecting the President's ability to receive candid legal advice"). As Assistant Attorney General John Harmon explained in a memorandum issued at the end of the Carter Administration:

[T]he reasons for the constitutional privilege against the compelled disclosure of executive branch deliberations have special force when legal advice is involved. None of the President's obligations is more solemn than his duty to obey the law. The Constitution itself places this responsibility on him, in his oath of office and in the requirement of article II, section 3 that "he shall take Care that the Laws be faithfully executed." Because this obligation is imposed by the Constitution itself, Congress cannot lawfully undermine the President's ability to carry it out. Moreover, legal matters are likely to be among those on which high government officials most need, and should be encouraged to seek, objective, expert advice. As crucial as frank debate on policy matters is, it is even more important that legal advice be "candid, objective, and even blunt or harsh," *see United States v. Nixon*, 418 U.S. 683, 708 (1974), where necessary. Any other approach would jeopardize not just particular policies and programs but the principle that the government must obey the law. For these reasons, it is critical that the President and his advisers be able to seek, and give, candid legal advice and opinions free of the fear of compelled disclosure.

Memorandum for the Attorney General, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: The Constitutional Privilege for Executive Branch Deliberations: The Dispute With a House Subcommittee Over Documents Concerning the Gasoline Conservation Fee* at 26 (Jan. 13, 1981).

Put simply, as is the case with all other public and private sector clients who seek legal advice, if Executive Branch officials are to execute their constitutional and statutory responsibilities, they must have access to candid and confidential legal advice and assistance. *See Confidentiality of the Attorney General's Communications in Counseling the President*, 6 Op. O.L.C. at 495 (emphasizing that the attorney-client "privilege . . . functions to protect communications between government attorneys and client agencies or departments . . . much as it operates to protect attorney-client communications in the private sector"); *Rules of Evidence for the United States Courts and Magistrates*, 56 F.R.D. 183, 235, 237 (1972) (expressly stating that the "definition of client" for purposes of attorney-client privilege "includes governmental bodies").

Finally, we note that the Executive Branch's need to protect the confidentiality of Office of Legal Counsel legal advice is comparable to the need recognized by Attorney General Reno in 1996, in advising President Clinton on the legality and appropriateness of an executive privilege assertion with respect to "analytical material or other attorney work-product prepared by the White House Counsel's Office":

> I agree [with the Counsel to the President] that the ability of the White House Counsel's Office to serve the President would be significantly impaired if the confidentiality of its communications and work-product is not protected . . . . Impairing the ability of the Counsel's Office to perform its important functions for the President would in turn impair the ability of you and future Presidents to carry out your constitutional responsibilities.

*White House Counsel's Office Documents*, 20 Op. O.L.C. at 3.

For all of these reasons, the bill's expansion of section 530D's reporting obligations would be unconstitutional even with respect to non-classified information.

## II. Policy Concerns

The bill's disclosure requirements are not just unconstitutional; they are also unjustified and bad policy. Requiring the Department to report on the broad range of confidential legal opinions referenced in the bill would deter precisely the kind of candid deliberations regarding government action that has long been recognized as vital to the integrity of government decisionmaking. In 1974, a unanimous Supreme Court emphasized

> the valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their manifold duties; the importance of this confidentiality is too plain to require further discussion. Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.

*United States v. Nixon*, 418 U.S. 683, 705 (1974). *See also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975) (noting that the deliberative process component of executive privilege is premised on the belief that disclosing the "communications and the ingredients of the decisionmaking process" would inevitably "injur[e] the quality of agency decisions" by inhibiting "frank discussion of legal or policy matters").

The bill's requirements could deter the President and Executive Branch officials responsible for executing government programs, including especially highly sensitive programs, from soliciting the Department's legal advice for fear that the advice would trigger reporting obligations that could compromise a program and/or subject its legal assessment to unnecessary and damaging uncertainty or publicity. In addition, the bill's reporting requirements could chill the Department's ability or willingness to provide full and candid legal assessments of statutes or government actions. For example, legal advisers might avoid relying on

the well-established clear statement and constitutional avoidance rules of construction in order not to trigger the bill's reporting requirements. Doing so would inevitably degrade the quality of the resulting legal advice and, thus, the integrity of the government decisionmaking to which it pertains. The bill would thus undermine, rather than advance, the public's interest in having Executive Branch officials, just like private parties, receive full, candid and confidential legal advice to ensure that they conduct the government's business effectively and in accordance with law.

The foregoing problems with the bill's reporting requirements are not a necessary (or permissible) cost of legitimate congressional oversight. Congress has ample authority to oversee Executive Branch programs and activities, and can inquire through the committee and Government Accountability Office oversight processes about the legal basis for Executive Branch decisions in the course of overseeing those programs and activities. The Executive Branch has a well-established process for accommodating such inquiries, *see, e.g.*, *Congressional Requests for Confidential Executive Branch Information*, 13 Op. O.L.C. 153, 158–61 (1989); *Whistleblower Protections for Classified Disclosures,* 22 Op. O.L.C. at 101–02, which process the courts have recognized as the constitutionally contemplated method by which the branches should share information that Congress has a legitimate need to know but that the Executive Branch also has a legitimate, constitutionally based need to protect. *See, e.g.*, *United States v. AT&T Co.*, 567 F.2d 121, 127 (D.C. Cir. 1977). The bill's reporting requirements are an unnecessary and unwise effort to replace this well-established process with a reporting structure that violates constitutional limits and undermines the public interest protecting the confidentiality of legal advice vital to the integrity and legality of government decisionmaking. Accordingly, the Department strongly opposes the legislation on both legal and policy grounds.

Thank you for the opportunity to present our views. The Office of Management and Budget has advised us that from the perspective of the Administration's program, there is no objection to submission of this letter.

MICHAEL B. MUKASEY
*Attorney General*